And you may call the next case. Case 14-5649, D.J. Johnson et al. v. Lockheed Martin Corporation. Feral argument of dispute. 15 minutes per side. Good morning. Good morning, your honors. May it please the court. My name is Tony Bucher. I represent the plaintiffs in this matter and I have reserved three minutes for rebuttal. Very simply, this is an age discrimination case. My clients, Andrea Johnson, Randall Prather, Al Stakelin, Shelby Thompson, and May Lee Walker have filed age discrimination cases against Lockheed Martin as a result of their being laid off in conjunction with a sort of hybrid termination of a subcontract slash reduction in force. I take care to name each of my clients individually because I do think that it's important that we remember that each of these five clients have their own individual cases. And I think for that reason, we have to look at each individual client's case to determine whether or not any or all of those cases should have survived summary judgment. And I feel that the district court sort of lumped all of these cases together to conclude that generally, sorry, no age discrimination, all of you guys are gone. We're not going to look any farther. In granting the defendant's motion for summary judgment, the district court concluded that plaintiff could not establish a prima facie case of age discrimination because Lockheed Martin hired some individuals that were older or not substantially younger than the plaintiffs. The district court went the next step and also ruled that you did not establish pretext as to their legitimate non-discriminatory reason for their actions, right? I don't believe that they went into pretext. They simply stopped a prima facie case. They stopped it, okay. Okay, they argued that, right? That was an alternative. I mean, that is an issue on appeal. I think you're correct. Yes, both issues were presented. Judge Hood below did not get to the second step, but they presented that as an alternative argument for affirmance below so it's preserved, and they've raised it on appeal, right? That is correct, Jerome. That is correct. And I think, again, primarily I think the first issue that we have to get past, or I think I'm forced to address, is that the judge's decision that simply the hiring of one or a few individuals from within the protected class negates any inference of discrimination. Assuming the judge erred there, and I think you've got a pretty good argument maybe he did, I'm concerned about whether you establish pretext. Okay. And then I'll move directly into my colleagues may have. I mean, just telling you. I agree absolutely, okay. I think that that approach that Judge Hood took would be catastrophic because you hire one person in the protected class and you never hire anybody else out of the protected class, and somehow you're immune. So, yeah, I think the pretext, candidly, I think you've got a serious problem. Okay, and I appreciate that. And I will, and then I'll move pretty quickly into pretext, but I would like to, if it's okay with the court, I want to address the Holtzclaw case just briefly because that's the case that the district court relied on. And in doing so, I think that sort of the devil is in the details of that case. I'm not so concerned about the decision in Holtzclaw because Holtzclaw had, in their hiring process, they had multiple stages with very objective criteria, and then when they went to the subjective stage of the interview stage, they had six panelists. So there was every opportunity for, you know, we could sort of eliminate any individual panelist bias because when you look at the total of the six panelists, you're going to It's like a diving competition where you throw out the high score and the low score. Exactly. And I think that in that respect, the approach that the employer took in Holtzclaw was commendable because they took strains or took efforts to weed out any of that subjective biases. And in this case, when you look, again, looking at the details that each hiring manager sort of put into practice, what becomes blatantly obvious is that one or two people, hiring managers, had control over this process from start to finish. They did these skills assessments, which that hiring manager determines what skills we're going to look at, and then they also get to determine how we're going to score each individual on those skills. This leaves every opportunity for that hiring manager to incorporate biases at any level they want to. Is there any evidence that they did, though? I think the evidence that they did is primarily the fact that these positions, while they want to represent that these positions are skilled labor, with all due respect to my clients, for the most part, it's not. Deidre Johnson is a great example. They concluded that Deidre Johnson, who had worked on this contract for 25 years, was not as qualified for an entry-level maintenance trades helper position as an individual that had been there three years and had never progressed beyond that entry-level position. My client had progressed various levels and had reached an exhibit specialist, too, which was, I think they'll admit, a significantly more prestigious and promoted position. In doing so, in saying that this individual, this farmer individual, was more qualified, they said, well, we scored him a four in bag and tag. Bag and tag is putting a finished product in a box and slapping a label on it. With all due respect, that is not skilled labor. That does not require us to say, well, he's much better at putting bubble wrap on a product or putting it in a box. At that point, I think you sort of have to question whether or not skills are really the determining factor and whether or not if it's really just, we like the guy, we'll say these are the skills that are important, we'll score him high. Even if they say, well, we like the guy, that is not an illegal reason to hire somebody. You have to establish that it violates the law and here that they're discriminated based upon their age. You seem to argue that these things are subjective in nature, but you don't really go to the other step to connect it. Well, the subjective nature somehow leads to age discrimination. You're saying it could, but we don't have any connection there. I understand the concern there. I guess in addressing that or dealing with that issue, I went back and looked at some of the documents that were submitted with the record in response to summary judgment. I think one that's very telling, and this was in our exhibit 11, and I don't have the docket number on it, but it was basically a list of everybody that was hired on September 5th of 2011. There were essentially four hiring managers that hired 358 employees on September 5th, 2011. When you look at them, there's a hiring manager by the name of Damon Evans who was the hiring manager for the majority of the individuals. He hired 212 individuals. Twenty-eight of them were over 50 for a grand total of 13.2%. You compare that with Richard Perkins. What was the pool of applicants? Was the pool of applicants over the age of 50 more than the 13%? Well, I think when you look at Richard Perkins, who was another hiring manager, whose hiring was 36.4% of individuals over 50. Unfortunately, my clients were not in the pool of applicants for Richard Perkins. They were in the pool. Two of them were in the pool for Damon Evans. And I think that when you look at his overall numbers, it has to raise an eyebrow. It raises a question. My question is, you said the one supervisor hired 13% over 50. The other guy hired 30% or whatever it was. But what were the breakdown of the total applicants in that? That may make a difference. If the pool of one supervisor has more older people and the other one does not, I mean, I necessarily equate the two. And I do understand that, and I apologize. Do we have that figure? I don't have that number, but I think that number is discernible from the record. I did not. I'm not going to really beat the pace for you, though. And I appreciate that, and I understand that. But I think, again, the issue I have, the big concern that I have is, again, is when you have something that is, and I understand, there are opportunities for subjective tests that will not raise a red flag for discrimination. But, again, when you look at the individual facts of these cases, it does raise a red flag. Again, with Al Stakeland and Randall Prather, they were machinists in a certain area under Donna McClure. They were NC2 machinists. She didn't hire a single NC2 machinist that were above the age of 50. And the record will reflect that the individuals that were NC2 operators before this transition were individuals over 50 were well represented among that group. And then with this transition, those numbers are completely eliminated. Was there a pay differential depending upon seniority? No. It's set by government standard. They get the exact same. So that motive, which is often a feature in age cases, does not exist. Correct. What about over 40? Why do you point to over 50 rather than over 40? Because, obviously, with an age claim, it's not as significant if, I apologize, but if the sort of factor is whether or not they are significantly younger. I understand. So it's that six, seven years. And my clients range in age from 53 to 60. And I understand 47 would be the demarcation line sort of for those individuals that are 50. And it fluctuates. But I think for ease of argument and because of limited time, I point to the 50 as sort of a benchmark. Yeah. And I think, again, and I guess I'll go to, again, because my clients are individual, it's very difficult to. He's also involved in an interview. Tell me about the interview. Only one of my clients got to the interview stage. They were eliminated before they even got to it. And he kind of fell flat on his face, according to the interviewers. He seemed disinterested and so forth. But it seems to me pretty telling that they have a list, an interview list, and that's part of the record. And it says all the individuals that are being interviewed for an Aircraft Mechanic 3 are interviewed on August 17, 2011. We've got 20 of them, back to back to back, back, all day, running all day. Nobody else is marked as an interview for an Aircraft Mechanic 3. They'll say that other people applied and were considered because they applied for twos and threes. But in the interview schedule, they were listed as twos. My client wasn't interviewed until four, five days later. And when my client, he's the only one, only Aircraft Mechanic 3 that was interviewed on August 22, 2011. And when they interviewed him, I say 16, they'll say 13, offer letters had already been sent out. And the reason I say 16 as opposed to 13, we've got 13 offer letters that are dated August 18, 2011. Four days before my client sat down for his interview. I think it's safe to say he wasn't considered for those 13 positions. We have three more offer letters that were sent out on August 22, 2011. My client was interviewed on August 22, 2011 at approximately 7.10 p.m. Therefore, I think it's pretty safe to say that those offer letters were prepared before 7.30 at night. And so there we have 16 positions that Shelby Thompson was obviously never given consideration for. They were filled before. And Shelby Thompson is a particularly concerning case because he was one of only eight individuals that were Aircraft Mechanic 3s. They hired 21. And he didn't get one of those positions. They had to bring up people, the Aircraft Mechanic 1s, they had to promote Aircraft Mechanics 2. He didn't even get an interview until they hired 16 people. And I'm out of time, and I apologize. But I'd be happy to answer any questions. We've asked your questions. That's no problem at all. Thank you. Thank you. Police, the Court. I'm Keith Moorman. I represent Lockheed Martin. Since I have a hostile audience on the Prima Facie case issue, but I would like to address that at least briefly. It's pretty clear that the law is, well, it's definitely clear that the law is in a failure to hire case, the plaintiff has to show that the person who was hired was from outside the protected class. Now, the issue is what if it's a multiple hire case? And that's where I sense you have some issues. But the question is if one's not enough, then how many would be enough? And in this case, the plaintiffs have never said. They complain that one shouldn't be, but they haven't said how many should be. And you have the case of May Lee Walker, and there were 32 electechs hired. Sixteen of them were not substantially younger. So you had 50% in that situation. Now, my sense is the plaintiffs would have you rule as a standard that if anybody outside the protected class is hired, then they have a Prima Facie case. So, I mean, their position would be the total opposite. If they hired one outside of the protected class, then they would have a Prima Facie case. That doesn't seem reasonable either. That doesn't seem circumstantial. But, I mean, Judge Hood really did look at one. I mean, his rationale is kind of hard to defend, isn't it? Well, it's interesting, Judge, that you would think this issue would have come up before. The only case we had was the Holstall case, which was pretty much on point. And I know the appellants take some issue with it, but it's about as on point as you can get with a dynamic fact situation. And so he followed that case. But I think he didn't have any reason to follow any other rule. There's no other rule that's been established by this or any other court, at least in a failure-to-hire case. And one of the factors, again, that I think is relevant here, when you have a reduction-in-force case, the employer knows the ages of the people they are laying off. But in a failure-to-hire case, at least here, Lockheed Martin did not know the ages of the people that it was interviewing and ultimately hiring. And that does make this difference from a reduction-in-force case, because most employers, if they're doing a mass layoff, they would run their own statistical analysis to see, are we outside the factors here? Are we laying off too many minorities? Are we laying off too many older people? But in a failure-to-hire case, a mass failure-to-hire, there's no way the employer could even test whether it was running afoul of the law. So I think to impose a standard, a pretext standard that requires something more than one, is difficult to know what that should be. But if you went with the reduction-in-force standard, which this court recognized in Barnes and many other cases, the court there said that we don't want a standard where the prima facie case is essentially automatic. Yes, the prima facie case should be relatively easy to meet, but it shouldn't be automatic. And a plaintiff should not be able to establish a prima facie case by showing just one person outside the class was hired. But in that case, and in all reduction-in-force cases, the plaintiff still has to show something more. They have to have statistics. They have to have direct evidence. Perhaps they argue that the process itself was biased, had a desperate impact. It seems to me that's the argument that the plaintiff is making here. Well, they flirt with that argument, Your Honor. I'm not sure they come out and make it. And one of the problems with their case is there are a lot of numbers that are thrown around. But as Judge Griffin noted, there's no statistical analysis. They want to say only one person was hired that was older than 50, but they beg the question, well, how many apply? I can tell you from the record, it's clear in the record, Damon Evans, that he mentioned, was in charge of part of the operation called Aviation Hill. Aviation Hill is a place where they're actually crawling around and through the aircraft to assemble the aircraft. And so he may have had a different number of older workers performing that job than people who were in charge of a shop where they were working at a bench. But we don't have those numbers. And so this Court is not able to say that they've met this something extra standard. We can draw absolutely no reliable inference from 13 percent, 37 percent, 90 percent, 2 percent. Not in terms of the plaintiff making a prima facie case. Not in terms of them having presented enough statistical evidence to make you think something happened here that's out of line with what would happen if they weren't biased on age. They also didn't present any direct evidence. And their circumstantial evidence is very thin, which gets into the pretext. But this is not a case where there were numerous statements of ageist comments, like in the Ekagovic case where the statements the Court said were numerous and where the Court found that there were statements that this company has too many white-haired old men and we've got to change that. Does the record show, and if so, does it matter, and if not, then obviously it doesn't, the age of the decision-makers? In other words, he was pointing to various people as having kind of, if you peel back the layers and look at it, there's really only one person making the decision. Right. That is in the record. Again, there's not a chart, and you're not going to make our case for us, but that is in the record. They did ask the managers for their ages, and the managers were people who tended to be in their late 40s and 50s. I don't have a list of their ages. But the decision-makers, the hiring managers, tended to be older workers themselves. And in this case, it was interesting. I took the depositions and I asked each of the plaintiffs, did you ever hear anybody say anything? Did you ever see anybody do anything to make you think that they were biased against older workers? And to a person, they all said no, they never did, which when you think about a company as large as Lockheed Martin and they're hiring 385 people for five plaintiffs to not come up with a single time where they saw any evidence that Lockheed Martin was against older workers is pretty impressive. And as I believe you know, Judge Carr, there was no benefit here to Lockheed Martin in hiring a younger workforce. There was no ability to save money. If you were an aircraft Mech 2 and you were 30, you got paid the same as if you were an aircraft Mech 2 and you were 50 or 60. Now what the plaintiffs really are about in this case is that they believed the decision should have been made based on seniority. To a person, again in their depositions, that's what they said. And the reason for that is they had been on this contract for a long time and previous employers had made decisions based on seniority. And I think the rumor was Lockheed Martin was going to base it on seniority. And then it didn't happen that way and that's what caused the plaintiffs to be upset, obviously that and not getting a job. But that's really their evidence of pretext is that, as you were noting, Judge Griffin, that well, there could have been some kind of discrimination. We don't have any evidence of it, but there could have been. And we must have been the better workers because we had so much seniority. But as this court and others have recognized many times, the subjective beliefs of the plaintiffs into their own qualifications is not relevant and the plaintiffs' beliefs and feeling that a different selection method is not relevant. Bottom line is the plaintiffs can't just take pot shots at the process. They can't just come in and say you should have done this and you could have done that. They have to establish that there was age discrimination behind these decisions. And they simply haven't done it. They haven't even made a pretext showing. The hiring of 385 people in just a matter of three weeks, there may have been a mistake or two made in the process. I think you would expect that. But there is no evidence in the record that any mistakes were because of age. There's no evidence in the record that Lockheed was biased against older workers. The plaintiffs have not shown that anybody who got a job was less qualified than them. I asked them that in their depositions. Who got a job that you think is less qualified? And they answered, well, I can't say anybody did. I mean somebody was not going to get a job. It was not a situation where everybody could be happy. But they have not shown that their failure to get a job was caused by any age discrimination or bias from Lockheed Martin. We've got time left, but I don't see any questions. Apparently not. All right. Thank you. Thank you, Mr. Mormon. Buecher. Opposing counsel raised several issues that I guess I'd like to address, and I guess I'll start off with one of the last points. He talked about how the subjective beliefs of the plaintiff that they weren't, that they made some poor decisions or that they were not hired because of their age or irrelevant.   When we look at the process as a whole, I think you have to go back and look at, okay, Lockheed Martin, when you consider the way they did their work, these hourly employees, they received work orders, clocked in on a work order, completed the work order, and then when they were finished, they clocked out on the work order and it moved along. Based on that card system that they used, they had hard data. They could have went to. We could look at hard data. We can say, who are the most efficient people? Who are the people with the least amount of scrap? Who is getting the most done? And they chose not to do that. Instead they said, you make your decision. We don't care what you do. Just go ahead and give us some reason for justifying it. Put it in paper that they get a four on this skill, and we'll go ahead and that's good with us. But I think that it's pretty telling that we don't, when we have hard data available, we don't rely on it. And one particular anecdotal story that one of my clients raised is, I think, very interesting. A gentleman by the name of Brian Conkright was a machinist at Lockheed Martin, and he was hired when they made this transition. My client speaks of a contest Mr. Conkright sort of had with himself where he would see how long in a day he could go without doing anything. He'd clock in, presumably clock in on his job, and sit there and stare at his machine for as long as he could, and bragged of having records of five, six hours. There is data that Lockheed Martin could have referred to to support that. But we don't look at those things. We just say, well, he can operate that machine. We'll give him a four on it. And Brian Conkright, memory serves, 30-something, buddy of the 30-something lower-level lead, gets hired. And I think, again, when you – I understand the concern of simply looking at us and saying subjective is – just saying that it's subjective is not quite enough to establish age discrimination. But you have to look behind those subjective decisions and see how those decisions were made and see the impact of those decisions. May Lee Walker, another one, he said that they hired 32 elect tech ones. They hired 60-something elect tech ones, hired under two different managers. This Mr. Evans that we refer to, May Lee Walker was a candidate for Damon Evans' position as well as the other manager. Damon Evans hired people who had been with the company for less than six months, and he retained them at this transition. They had been on that contract. Now, to suggest to me that this person was somehow more qualified doesn't hold water. And I think if you look behind all of those decisions, that will reflect itself. And I see that I'm out of time, and I appreciate it. Okay. Well, thank you, Mr. Bucher and Mr. Moorman, for your arguments this morning. The case will be submitted. Remaining cases, I think, are in the briefs. There's really no need to call them, so you may –